THE STATE ex rel. WILLIAM THOMAS v. CHARLES H. DAUES et al., Judges of St. Louis Court of Appeals.

In Banc, April 9, 1926.

1. **CERTIORARI: Conflict of Opinions: Decisions of Court of Appeals.** In *certiorari* to a court of appeals, based on a conflict between its opinion in a given case and the previous decisions of this court, it is immaterial what a court of appeals has said in other cases.

2. **NEGLIGENCE: Death of Injured Party: Survival of Cause to Husband or Wife.** The decision of this court in the recent case of State ex rel. St. Louis Brewing Association v. Reynolds, 226 S. W. 579, was to the effect that, under the Damage Act, the cause of action of the husband, for the negligent killing of his wife by a railroad company, was a continuation of the cause of action which she would have had had she survived her injuries, and was the same cause of action; and ordinarily the decision of the Court of Appeals holding that the husband's cause of action was not the same, but a new cause of action, would be quashed upon *certiorari*. But its decision is not quashed, because the holding in said case of State ex rel. v. Reynolds was wrong.

3. ———: ———: **Transmitted Right: New Cause of Action.** The purpose of the Damage Act of, 1855 (which in this essential respect is the same as the present Damage Act) was to give a new cause of action where none existed at common law. It did not revive a cause of action theretofore belonging to a deceased person, but it gave a new cause of action to named persons bearing a named relationship to the deceased. A wife has a cause of action against a railroad company which has negligently injured her, so long as she is alive, but that is not a cause of action which has been given her by the Damage Act; but if she is killed by the negligent act, her husband's cause of action is a penalty inflicted by the statute,

and is a new cause of action given him by the statute,. and is a cause of action which prior to her death did not exist.

4. ——: ——: New Cause of Action: Witness: Engineer of Defendant Railroad. A cause of action by a husband against a railroad to recover the penalty prescribed by the Damage Act for the negligent killing of his wife is not a survival or continuation of the common-law action, to recover damages for her injuries, which she would have had had she survived the accident, but is a new cause of action which the statute gives to the husband upon her death, and to such new cause of action, brought against the railroad company alone, its servants whose negligence brought about her death are not parties; and under the statute (Sec. 5410, R. S. 1919) declaring that no person is disqualified as a witness in a civil suit by reason "of his interest in the event of the same as a party or otherwise" unless such witness be a party (a) to a contract involved in the suit, and the other party to the contract is dead, or (b) unless the original party to the "cause of action in issue and on trial is dead," the engineer of the train which caused the wife's death is a competent witness to testify for the railroad, in the husband's suit; and the Court of Appeals in ruling that the engineer was a competent witness, and that it was error to exclude material evidence offered to be proven by him, followed the ruling of this court in . Entwhistle v. Feighner, 60 Mo. 214, and its decision reversing the judgment of the trial court for its error in excluding the engineer as a witness and rejecting his material testimony, is approved, although that court did not follow the late decision of this court erroneously deciding that the husband's cause of action was the same cause of action which the wife had up to the moment of her death.

5. CERTIORARI: To Court of Appeals: Conflicting but Correct Decision. The law does not contemplate a useless act. Where it appears upon *certiorari* to a court of appeals that it has failed to follow a recent decision of this court, but that its opinion is nevertheless a rightful ruling on the vital question involved, and that the decision of this court with which it conflicts is wrong, this court will overrule its own wrongful decision and quash the writ, for otherwise the Court of Appeals would be compelled by the Constitution to decide the case again just as it has already decided it.

Corpus Juris-Cyc. References: Abatement and Revival, 1 C. J., Section 339, p. 185, n. 7. Certiorari, 11 C. J., Section 37, p. 106, n. 71 New; Section 355, p. 200, n. 31. Death, 17 C. J., Section 38, p. 1185, n. 38. Judgments, 34 C. J., Section 1114, p. 723, n. 43. Witnesses, 40 Cyc., p. 2297, n. 69.

*Certiorari.*

State ex rel. Thomas v. Daues.

PRELIMINARY RULE DISCHARGED.

*Douglas, Inman & Horsefield* for relators.

(1)   The opinion of the Court of Appeals holding the evidence of the engineer as to sounding the whistle and ringing the bell was competent is in direct conflict with the following opinions of this court, which holds that such evidence is not competent, and most of which opinions were called to the attention of the Court of Appeals in relator's brief and motion for a rehearing. Leavea v. Railroad Co., 266 Mo. 151; Lawhon v. Laboratories, 252 S. W. 44; Edmonds v. Sharff, 279 Mo. 78; Lieber v. Lieber, 239 Mo. 1; Chapman v. Dougherty, 87 Mo. 617; Williams v. Edwards, 94 Mo. 447; Eaton v. Kates, 175 S. W. 950; Real Estate Co. v. Bldg. Co., 196 Mo. 358; Griffin v. Nichols, 224 Mo. 275; Savings Bank v. Slattery, 166 Mo. 620; Banking House v. Rood, 132 Mo. 262; Brunk v. Street Car Co., 198 Mo. App. 243; McKim v. Street Car Co., 209 S. W. 622; Carroll v. Railroad, 157 Mo. App. 247.   (2)   The cases cited by the Court of Appeals as authority for the competency of the engineer as a witness to the things contained in the offer of proof are not in point under the construction placed on our statute by this court for the reasons that (a) this case is not an action on or growing out of contract, (b) this is an action for tort where the engineer was a joint tortfeasor and, therefore, was a party to the cause of the action, (c) because our courts in some cases seem to make a distinction where the agent represents an individual (as an individual is a party and can act for himself) and a corporation, as a corporation can only act through their agents, (d) because the only case in point by the Court of Appeals has not been followed by later cases.   (3)   The cause of action in this case is for injury to decedent which resulted in her death, and her cause of action for the injury was transmitted to plaintiff by reason of her death.   Proctor v. Railroad, 64 Mo. 119; Eaton v. Kates, 175 S. W. 950; Strode v. Transit Co.,

197 Mo. 616; Lampe v. Brewing Assn., 221 S. W. 447; State ex rel. v. Reynolds, 226 S. W. 579; Bates v. Sylvester, 205 Mo. 500; Strotman v. Railroad, 211 Mo. 254; Miller v. Railroad, 109 Mo. 350; Sherrin v. Railroad, 103 Mo. 378.

*Jones, Hocker, Sullivan & Angert* for respondents and Railway Company.

(1) The engineer was a competent witness. (a) The deceased was not a party to the cause of action on trial, and plaintiff's cause of action arose on or after her death. Entwhistle v. Feighner, 60 Mo. 214. (b) The engineer was not interested in the cause of action on trial within the meaning of the statute. The courts of this State uniformly hold that the agent of a corporation, in such circumstances, is not disqualified by the death of the other party to the transaction in controversy. R. S. 1919, sec. 5410; Wagner v. Binder, 187 S. W. 1151; Allen Estate Assn. v. Fred Boeke & Son, 254 S. W. 858; Clark v. Thies, 173 Mo. 628; Allen v. Jessup, 192 S. W. 722; Darby v. Northwestern Ins. Co., 239 S. W. 68. (2) When jurisdiction is once obtained by the Supreme Court on *certiorari* it will consider all conflicts in the opinion of the Court of Appeals with the decisions of the Supreme Court, whether suggested by the parties or not, and will certainly consider such conflicts as may be suggested by the respondents or by the real party in interest. State ex rel. Vulgamott v. Trimble, 300 Mo. 101; State ex rel. v. Ellison, 273 Mo. 228; State ex rel. v. Reynolds, 286 Mo. 223; State ex rel. v. Trimble, 271 S. W. 43.

GRAVES, J.—*Certiorari* to the St. Louis Court of Appeals. This proceeding grows out of the case of William Thomas v. Chicago Rock Island & Pacific Railroad Company, tried in the Circuit Court of the City of St. Louis, and in which the plaintiff recovered for the alleged negligent killing of his wife, by defendant, the sum of $4200. Upon defendant's appeal the case went to the

St. Louis Court of Appeals, where it was heard and the judgment reversed and the cause remanded. Said court declined to hold that plaintiff did not make out a case for the jury, but reversed and remanded the case solely upon the ground that the trial court refused to admit competent evidence offered by the defendant. That portion of the opinion reads:

"The defendant produced as a witness on its behalf the engineer who was operating its locomotive at the time of the accident. The plaintiff objected to the competency of this witness, on the ground that Mrs. Thomas, the other party to the transaction or cause of action, was dead. The court sustained the plaintiff's objection, whereupon the defendant proffered testimony to be given by the witness as follows:

" 'I was engineer on train No. 23 on April 18, 1922, at the time we struck a lady on Pennsylvania Avenue crossing in University City, Missouri. I sounded the regular crossing whistle for this crossing at the whistle post, and when I was about 300 feet east of the crossing, and the last blast was sounded as I was about at the box car. We were running about ten miles an hour at the time. The bell on the engine was ringing by automatic air, was ringing all the time within a quarter of a mile of the crossing. Approaching this crossing I was seated in my engineer's box. I first saw this lady when she was near the switch track. She appeared to be in a walk then, and suddenly she started to run and went in front of the engine and seemed to throw her left arm up. The pilot struck her, that is, the right side of the pilot, and carried her about sixty feet on the pilot, then she seemed to slide off the pilot to the right, with her limbs on the rail, and the engine running over them severed both legs from the body. The crossing bell, which is a very loud one, was ringing. From the actions of the lady it seemed to me that she intentionally threw herself in front of the train. After I saw this lady starting to go across the track I applied the air and did everything possible to stop the train. It was impossible for me to stop the train in time

to avoid striking her after she started to run towards the track.'

"The court excluded the proffered testimony on the ground of the incompetency of the witness, and the defendant assigns here this ruling of the court as reversible error. This assignment must be sustained. Under the authorities the engineer was a competent witness. [Entwhistle v. Feighner, 60 Mo. 214; Wagner v. Binder, 187 S. W. 1128; Allen Estate Assn. v. Fred Boeke & Son, 254 S. W. 858; Prindle v. Fidelity & Casualty Co., 233 S. W. 252; Darby v. Northwestern Mutual Life Ins. Co., 239 S. W. 68; Massey v. Butts, 221 S. W. 153; Bates v. Forcht, 89 Mo. 121.]"

Relator charges that this ruling conflicts with the last controlling rulings of this court, some of which are set out in the petition for our writ, and others have been added in the brief. The defendant contends that the opinion of the Court of Appeals is right on the ruling as to the admissibility of the engineer's testimony, but contends that its ruling on defendant's demurrer to the evidence was wrong, and such portion of the opinion should be quashed. Thus we have both parties asking to quash specific portions of the opinion. The latter contention is made by counsel for the railroad, who purport to represent respondents. It is hardly possible that respondents have authorized this attack upon their own opinion, but this situation will be left to the opinion, along with other matters involved. At most, if both contentions are considered, we have for consideration, (1) an alleged conflict in the ruling of the Court of Appeals to the effect that the engineer in charge of the train which killed the wife of plaintiff, is a competent witness, and (2) the sufficiency of the evidence to take plaintiff's case to the jury.

I. This case is not without its difficulties. In fact our court has not spoken with a voice of unanimity upon what we conceive to be the vital questions in the case. Let us get the facts of the case in mind by a concise state-

ment. The husband (William Thomas) sued the Chicago, Rock Island & Pacific Railway, for the alleged negligent killing of the plaintiff's wife (Elizabeth Thomas), who was, at the time, diseased or troubled in her mind. The railroad alone was sued, and the engineer, whose acts are alleged to have been negligent, and the cause of the death of Mrs. Thomas, was not sued. Defendant offered the engineer as a witness, and the trial court ruled that he was incompetent on the ground that he was a party to the cause of action, the other party (Mrs. Thomas) being dead. The railroad company then made an offer of the evidence in detail to which it contended the engineer would testify, and this offer of proof was rejected by the trial court. The Court of Appeals ruled that the engineer was a competent witness, under the circumstances, and that the trial court erred in excluding his evidence. If the witness was competent the proffered evidence was material. This ruling is the vital issue so far as the relator is concerned. Our case law (so far as pertinent) will be discussed in succeeding paragraphs.

II. The Court of Appeals bottoms its judgment upon the following cases: Entwhistle v. Feighner, 60 Mo. 214; Wagner v. Binder, 187 S. W. 1128; Allen Estate Assn. v. Fred Boeke & Son, 254 S. W. 858; Prindle v. Fidelity & Casualty Co., 233 S. W. 252; Darby v. Northwestern Mutual Life Ins. Co., 239 S. W. 68; Massey v. Butts, 221 S. W. 153; Bates v. Forcht, 89 Mo. 121.

The case of Entwhistle v. Feighner, 60 Mo. l. c. 215, clearly supports the opinion of the Court of Appeals, if the same rule is to apply to corporations, acting through agents, as applies to individuals. Mary E. Entwhistle sued John M. Feighner for wrongfully killing her husband. Plaintiff proved as a part of the *res gestae* declarations of the deceased husband made at the time, and this was ruled proper under Brownell v. Pacific R. R. Co., 47 Mo. 239, and Herriman v. Strowe, 57 Mo. 93. But the real issue involved in the case at bar, and in the Entwhistle case, is thus disposed of by the court:

"The defendant offered his deposition in his own behalf, and it was ruled out, for the reason that he was not a competent witness.

"The statute (2 Wagn. Stat., p. 1372, sec. 1) permits parties to testify in suits, 'provided, that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party shall not be admitted to testify in his own favor.'

"In the present case there was no contract or cause of action to which the deceased husband was a party. The proviso in the statute was enacted for the purpose of putting parties on an equal footing, and not allowing a living party to give his version of a contract when he could not be confronted by the other party in consequence of death. When the husband was killed, then it was for the first time that the cause of action accrued to the plaintiff as his widow. Had the husband survived, this action never could have been brought. It is an action in which plaintiff and defendant only could be parties, for it did not arise till after the husband's death. The defendant therefore was a competent witness, and more especially so in this case, as the plaintiff had the benefit of her husband's declarations, and the court erred in ruling otherwise."

The gist of this ruling is that the cause of action which the wife had was a different cause of action from that of which the husband would have had, absent his death from the injurious assault. The other cases relied upon by the Court of Appeals are cases which go to the competency of agents of one of the parties to the suit to testify, where the other party is dead, the said agents having no personal interest in the controversy, except where they were agents of corporations, and might have been interested in the corporation, and thus incidentally interested in the outcome of the suit. In most of the cases cited by the Court of Appeals, supra, the agent had no interest whatever in the controversy, but in the case of Bates v. Forcht, supra, 89 Mo. 121, we have a little

different situation. Bates et al., as purchasers for value, and before maturity, sued upon a note given to the Macon Savings Bank signed by T. G. Sharp & Co., a co-partnership. In 89 Mo. 1. c. 127, it is said:

"Plaintiffs also introduced J. B. Melone, who, on his examination, stated that at the time the note was executed, he was president of the Macon Savings Bank, the payee in the note, and a large stockholder; that no one was present at the execution of the note except himself and T. G. Sharp, deceased; that neither of the other defendants knew of the transaction, and that he did not know John Shepherd and W. F. Forcht were the 'Company,' but supposed T. G. Sharp was. Plaintiffs then offered to prove by him the execution, delivery and endorsement of the note, and signature of Sharp, to which defendants objected on the ground that Sharp was dead, which objection the court sustained. This ruling was erroneous. If, as stated by Greenleaf on Evidence, supra, and Morse on Banks & Banking, 540-1, that: 'It may now be laid down in general terms that the officer or agent of the bank is a competent witness in its behalf, even concerning a transaction which he himself conducted, or in which he was interested or engaged,' then Section 4010, Revised Statutes, which is relied on to sustain the ruling, has no application, inasmuch as it was not the purpose of said section to disqualify witnesses who were qualified before its enactment, but on the contrary, to qualify witnesses who, but for the statute, would be disqualified. It is an enabling and not a disabling statute. Suppose that Melone, the president of the bank with whom the transaction is alleged to have been had, had died instead of Sharp, and Sharp & Company had been sued on the note, and issue had been joined as to its execution, and Sharp had offered himself as witness to disprove the signature, could the death of Melone, the mere agent of the bank, have been successfully interposed against the reception of his evidence? We think not."

The foregoing are the authorities, and the character of the authorities, upon which respondents bottom their ruling to the effect that the engineer was a competent witness in the case out of which this proceeding grew.

III.   Relator's contention is that the cause of action which the statute vested in the husband upon the death of the wife is the same cause of action that the wife had a moment before her death, and being the same cause of action, and the wife being dead, the engineer (being agent of defendant) was an incompetent witness for any purpose.   The Entwhistle case, supra, rules that they are not the same causes of action.   But relator claims that our later cases have in effect overruled the Entwhistle case upon this proposition.   The relator further urges that our court has ruled that the statute (R. S. 1919, sec. 5410) applies to actions *ex delicto* as well as to actions *ex contractu*.   We have so ruled.   [Leavea v. Railroad Co., 266 Mo. 151; Lawhon v. Laboratories, 252 S. W. ·l. c. 48.]   There are like authorities elsewhere: 28 Ruling Case Law, p. 494; Note to Leavea v. Ry. Co., L. R. A. 1916 D, p. 811 et seq.   The propriety of these rulings is not material under this point, with the question we have for discussion here.   The question in hand now is, whether or not the cause of action which the husband brought for the negligent killing of the wife is the same cause of action which the wife had for her negligent injury, the moment before her death.   If the wife was negligently injured by defendant she had a cause of action from the moment of her injury to the moment of her death.   When she died, at common law, her cause of action died with her.   Our statutes were to meet this situation.

If the cause of action, vested by statute in the husband, is a different cause of action, as ruled in the Entwhistle case, supra, then there is no question of the competency of the engineer to testify, because he does not fall under the ban of the statute, irrespective of diverse

views of the competency of an agent to testify where one of the principal actors is dead.

There are some loose expressions in the cases as to this matter, and a review of them is necessary, in order to determine whether or not we have disowned the doctrine of the Entwhistle case, supra. Certain it is that such case has not in terms been overruled.

The relator relies upon the following cases, as cases which in effect overrule the Entwhistle case, supra, viz: Proctor v. Railroad, 64 Mo. 1. c. 119; Eaton v. Cates, 175 S. W. 950; Strode v. Transit Co., 197 Mo. 616; Lampe v. Brewing Association, 221 S. W. 447; State ex rel. v. Reynolds, 226 S. W. 579; Bates v. Sylvester, 205 Mo. 1. c. 500; Strottman v. Railroad, 211 Mo. 1. c. 254; Miller v. Railroad, 109 Mo. 350; Sherrin v. Railroad, 103 Mo. 378. Of this number we eliminate the Lampe case, because it comes from a court of appeals, and such court could not directly or indirectly overrule the Entwhistle case. Both the Miller and Sherrin cases, supra, deal with the question as to who were fellow-servants prior to the acts of 1897 and 1905, and do not touch the question before us at all, either by rulings or by language used. We may also eliminate Strottman v. Railroad, supra, because the life was taken out of such case in Hawkins v. Smith, 242 Mo. 688. This case may require notice later.

In the cases there is much conflict of thought, as well as variety of expressions used in naming the action which a survivor of a deceased person has under our damage act, which originally was borrowed largely from Lord Campbell's Act. We have changed it some in the years since its original enactment, but in substantial terms (so far as the question in issue here is involved) it is practically the same. The amendments made were such as became necessary by our fellow-servant laws. As that portion of the present damage act is not material, and as the diverse language in our opinions occurred under the older law, we shall take the older law for the basis of discussion herein. The original Act of 1855 best suits for the discussion of the instant case.

The subsequent amendments are not applicable to this case, but such amended statutes carry the substance of the Act of 1855. [R. S. 1919, secs. 4217, 4218 and 4219.] Section 4218 (the statute providing for a survival of the cause of action, or a new cause of action, whichever term may be more appropriate) is identical with Section 3 of the original Act of 1855. Section 4219, Revised Statutes 1919, is practically the same as Section 4 of the original Act of 1855 (R. S. 1855, p. 647). The only applicable portions of the original Act of 1855, read:

"Sec. 2. Whenever any person shall die from any injury, resulting from, or occasioned by, the negligence, unskillfulness or criminal intent, of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive, car or train of cars; . . . the corporation, individual or individuals, in whose employ any such officer, agent, servant, employee, master, pilot, engineer or driver, shall be, at the time such injury is committed, or who owns any such railroad, locomotive, car, stage-coach or other public conveyance, at the time any injury is received, resulting from or occasioned by any defect or insufficiency above declared, shall forfeit and pay for every person or passenger so dying, the sum of five thousand dollars, which may be sued for, and recovered: First, By the husband or wife of the deceased; . . .

"Sec. 3. Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default, is such as would (if death had not ensued) have entitled the party injured to maintain an action, and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured.

"Sec. 4. All damages accruing under the last preceding section shall be sued for and recovered by the same parties, and in the same manner, as provided in the second section of this act; and, in every such action, the jury may give such damages as they may deem fair

and just, not exceeding five thousand dollars, with reference to the necessary injury resulting from such death, to the surviving parties who may be entitled to sue, and, also, having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default.''

The action in this case is bottomed on the second section of the original damage act, because the plaintiff's wife was alleged to have been killed by the negligent acts of a servant or servants while running a train for defendant. The damages now fixed are from $2,000 to $10,000 in the discretion of the jury. With these statutes before us, we will now take up, in succeeding paragraphs, the other cases to which relator refers, and upon which he relies for conflict.

IV.   The case of Strode v. Transit Co., 197 Mo. 616, is one written by the writer hereof.  In writing that case we discovered the sundry expressions of our court as to the character of the action by the survivor of one killed by a negligent act, and tried to steer clear of a personal commitment to any particular name for the cause of action. We had read the cases from the 60 Missouri Reports on down and prior cases.  In that case it was broadly contended that although the deceased settled with the tort-feasor, yet the survivors had a cause of action. This proposition we ruled against the plaintiffs, and said it mattered not by what name their suit might be called. Our language (197 Mo. l. c. 632) was: ''Whether the right of action is a transmitted right or an original right; whether it be created by a survival statute or by a statute creating an independent right, the general concensus of opinion seems to be that the gist and foundation of the right in all cases is the wrongful act, and that for such wrongful act but one recovery should be had, and that if the deceased had received satisfaction in his lifetime, either by settlement and adjustment or by adjudication in the courts, no further right of action existed.''

To like effect at page 625 of 197 Missouri Reports we said, in this same case: "Whether the cause of action given to the widow or children be denominated a transmitted right, a survival right, or an independent cause of action, it yet remains true that the foundation and gist of each and all is the negligent act which produced the injury. The negligent act was the basis, at common law, for the cause of action in the husband, and it is likewise the gist and basis of the cause of action in favor of the widow or children, or of the administrator as in some States provided. Our own court, however other courts have decided, look upon the right of the widow and children as a transmitted right and not strictly an independent right of action."

The last sentence shows that we were dodging the issue, as to the naming of the action. This case is of no special help to relator. It has been cited, however, as authority on the doctrine that the right is a transmitted right. In view of the whole opinion, and the caution which we were using to dodge the naming of the cause of action possessed by the survivors, its citation was hardly justified.

Leavea v. Railway Co., 171 Mo. App. 24, and 266 Mo. 151, are cited. In that case the agent for defendant had assaulted plaintiff's husband, and from such assault he died. The action was against the railroad, and in the course of the trial the plaintiff was permitted to testify fully, over defendant's objections. Teague, the agent, was dead, and the Court of Appeals ruled that Teague was the other party "to the cause of action in issue and on trial." The case was, however, certified to this court for the reason that the St. Louis Court of Appeals said that they ruled the statute as to the competency of witnesses applied to cases in tort, and that the Kansas City Court of Appeals in Drew v. Wabash Ry. Co., 129 Mo. App. 459, had ruled that the statute did not apply to cases in tort. When the case reached this court this conflict was the only matter discussed, and we ruled that the statute as to the competence of witnesses ap-

plied to cases in tort. So the question that we are now discussing was not decided by our court. Let us keep the question in mind. Is the action by a surviving husband or wife a new and different cause of action, as was ruled in the Entwhistle case, 60 Mo. 214, supra? Neither opinion in Leavea's case sheds much light upon this question. Certainly our opinion does not, and it is immaterial what the Court of Appeals said, in a case like this, where the sole question is a matter of conflict between our court and the Court of Appeals.

The case of Eaton v. Cates, 175 S. W. 950, sheds no light upon the present question. The second syllabus gives the rule stated in the opinion, and it reads: "Under Rev. St. 1909, sec. 6354, providing that in actions where one of the original parties to the cause of action is dead the other party may not testify, a plaintiff, suing a widow and children to quiet title, cannot testify as to the terms on which the land was placed in the hands of the deceased husband and father, where the widow and children rely on adverse possession." It will be at once seen that this ruling is inapplicable to the question before us, which we have just re-stated, supra. We have said that we need not notice the Lampe case, 221 S. W. 447, because it was an opinion of the Court of Appeals, and could not overrule our opinion in the Entwhistle case, supra. But this case, like the Leavea case, supra, reached this court. The Leavea case came by certification of the Court of Appeals and the Lampe case by original action here in *certiorari*. [State ex rel. v. Reynolds, 226 S. W. 579.]

State ex rel. v. Reynolds, 226 S. W. l. c. 580, supra, lends much comfort to relator, so far as language there used, is concerned. It is there said:

"This court in that case held that an action like this is not a new cause of action, but the death statute simply 'transmits the right to sue which the party whose death is occasioned would have had had he lived.'

" 'It is solely a preserved, transmitted right.' The cases cited are Proctor v. Railroad, 64 Mo. 120; White

v. Maxey, 64 Mo. 558; Strode v. Transit Co., 197 Mo. 616, 95 S. W. 851, 7 Ann. Cas. 1084, and Hennessy v. Brewing Co., 145 Mo. 112, 46 S. W. 966, 41 L. R. A. 385, 68 Am. St. Rep. 554. This ruling is supported by authorities elsewhere, and the cases are collected and discussed in Hartis v. Electric Ry. Co., 162 N. C. 236, 78 S. E. 164, Ann. Cas. 1915 A, 811. No contention is made that Harrell v. Railway has been overruled or modified. The rule it lays down was controlling on the Court of Appeals. On *certiorari* to a court of appeals no question concerning the correctness of a controlling decision of this court, which that court has followed, can arise. [State ex rel. v. Robertson, 262 Mo. l. c. 618, 172 S. W. 6.]

"Counsel suggest that the Harrell case can be distinguished, in that in the instant case (1)  the husband's cause of action and that of the widow are different causes of action; (2)  the question of marriage is in this case, and was not in the Harrell case; and  (3)  the husband was not competent to testify for his wife by deposition though the marriage had been dissolved by the husband's death before the deposition was offered.

"With respect to the first contention  (1)  this court, as already pointed out, has repeatedly held that the statute does not create a new cause of action in the widow, but merely transmits to her the cause of action which the husband would have had if he had survived his injuries. In Strode v. Transit Co., 197 Mo. l. c. 624 et seq., 95 S. W. 851, 7 Ann. Cas. 1084, the cases are collected and discussed. Other decisions and the text-writers take the same view.  [Hartis v. Electric Ry., supra; Tiffany on Death by Wrongful Act, sec. 192.] The 'substantial cause of action is the injury done by' relator.

"So far as concerns the second position  (2), it is not perceived in what way the issue as to the marriage, had such an issue been contested, was substantially different from the issue as to the relation of the minor children to the deceaed father in the Harrell case, in so far as this present contention of relator is concerned.  These or like issues were also present in the other cases already

referred to, and did not prevent conclusions like that reached in the Harrell case. In every case of privity the facts showing it are conditions precedent to the maintenance of an action dependent upon it; but we are cited to no case which holds that the presence of such an additional question of itself precludes the reading of depositions for or against persons in privity with one from whom the cause of action has come. No such holding is found in the decisions cited by, relator."

The citation of the Strode case, supra, we have noted above. This language, as does the language in Proctor v. Railroad, 64 Mo. 112, does say that the statute does not create a new cause of action, whereas the Entwhistle case says that it does. A similar ruling is found in Bates v. Sylvester, 205 Mo. 1. c. 500 et seq., and a like citation of Strode's case. This citation, as we have stated, is unauthorized by our language in Strode's case, but the ruling from Division Two of our court is squarely to the effect that sections 2 and 3 of our damage act do not create new causes of action, as was ruled in Entwhistle's case, supra. The ruling of the Court of Appeals in this regard was contrary to these expressions of our court, and ordinarily their opinion and record would have to be quashed, as not following such recent decisions.

The propriety of the ruling in the Proctor case, and these later cases, we leave for a further paragraph. Whether, when we are through, it will be necessary for the Court of Appeals to change its present ruling remains to be seen.

V. We are thoroughly convinced that WAGNER, J., was right, when in Entwhistle v. Feighner, supra, he said: "When the husband was killed, then it was for the first time that the cause of action accrued to the plaintiff as his widow. Had the husband survived, this action never could have been brought. It is an action in which plaintiff and defendant only could be parties, for it did not arise till after the husband's death. The de-

fendant therefore was a competent witness, and more especially so in this case as the plaintiff had the benefit of her husband's declarations, and the court erred in ruling otherwise.''

The record and the opinion in the instant case show that the death of plaintiff's wife was by the negligent acts of the defendant; by and through its agents, in the operation of a train of cars and plaintiff's cause of action is one arising under the second section of the original damage act, set out, supra. It is what we denominated the penalty section of our damage act. Whether it be the second or third sections of this act is not material to the question we are discussing. In Bates v. Sylvester, 205 Mo. l. c. 502, it is well said: ''And at the time this Act of 1855 was passed such action would not have survived the death of either of the party injured or the wrongdoer.''

All actions (at common law) based upon tort died with the death of either party. Thus, in Behen v. Transit Co., 186 Mo. l. c. 445, VALLIANT, J., said: ''A cause of action for personal injuries suffered by the plaintiff through the negligence of the defendant is an action *in delicto* which ceases by the death of either the plaintiff or the wrongdoer.'' See also, to like effect: 1 Cyc. 50; Davis v. Morgan, 97 Mo. 79; Kingsbury v. Lane, 21 Mo. 115; Higgins v. Breen, 9 Mo. 497.

The very purpose of the Damage Act of 1855 was to give a cause of action, where none existed at common law. It did not revive a cause of action theretofore belonging to the deceased, but it gave a new cause of action to named parties bearing relationship to the deceased. Take the instant case. Mrs. Thomas had a cause of action so long as there was breath in her body for damages for her negligent injury, but that is not the cause of action which her husband has by reason of the Damage Act. His cause of action is a penalty inflicted by statute for her death. Of course her death had to be caused by the negligence of defendant, before there was liability upon the part of the defendant. Absent death, her cause of action was

damage to herself.  With her death (absent a settlement of her cause of action) then sprang up for the first time (under the Damage Act) a cause of action in her husband.  There was no survival of her cause of action (because that was merely for damages suffered by her), but there was a new and different cause of action (by virtue of the Damage Act) given to the husband.  The negligence of the defendant was incidental and a factor in both, but this fact does not change the situation.  Her cause of action might have been purely a common-law action for damages, but certain it is that the husband's action is a purely statutory action for a penalty.  We labored long to dodge this discussion in Strode's case, supra, and it will be observed that we cite both cases and texts in that case covering all theories of the nature of the statutory action and wind up by saying that upon any theory there could be no recovery by the children, when the father had settled with the tortfeasor.  The weight of authorities is to the effect that the law contemplates but one satisfaction for the same negligence.  We repeat again that this case has been wrongly cited both in and out of this State.  We were trying to dodge, and think we succeeded in dodging, the very question that we are now forced to discuss, and discuss from principles. The only parties that are, or could be to this suit is plaintiff Thomas, himself, and the railroad company. At most the railroad company and its offending agent. Such is the "cause of action in issue and on trial."  By a reference to Section 5410, Revised Statutes 1919, it will be seen that no person is disqualified as a witness in a civil suit by reason "of his interest in the event of the same as a party or otherwise" unless such witness be a party, (1) to a contract involved in the suit, and the other party to that contract is dead, or (2) that the original party to the "cause of action in issue and on trial is dead."  Note that the clause speaking of a contract is separated from the other clause by "or."  In the case out of which this action grows, Mrs. Thomas was not a party to any contract, nor could she be a party to the

"cause in issue and on trial." In other words she could not be a party to a suit to recover a penalty for her own death. The statute made the husband the party to "the cause of action in issue and on trial," and he was much alive at the trial. We mention this to draw a distinction between this case, and the case of Lawhon v. St. Joseph Laboratories, 252 S. W. 44. In the Lawhon case the defendant (as a defense) plead and tried to prove a contract by which the deceased was made an independent contractor. That case was dealing largely with this contract, so invoked by defendant, when the other party to the alleged contract was dead. But what general effect our views herein may have upon all features of that case we are not now discussing. Of this we feel certain that the doctrine of the Entwhistle case, supra, is right. That under it, the Court of Appeals properly ruled as to the admissibility of the rejected evidence in the case out of which this proceeding grows, although such court did not follow the latest rulings upon the question as to whether or not the cause of action was a new and different cause of action. Our cases are wrong, and the Court of Appeals is right on this question.

The proposition now is what to do with the opinion. If a Court of Appeals follows our last ruling we will not quash its opinion, although we conclude that our own is wrong. This because such court has obeyed the constitutional mandate by following our last previous rulings. But that is not the situation here. The Court of Appeals refused to follow our last expressions on the vital question, and we have concluded that they were right in so doing. If we quash their opinion for the refusal to follow the latest expressions of our court, then the case is left there for a rehearing, and upon this rehearing this opinion will be our latest ruling, and they would be obligated to follow it under the Constitution. In following it, such court would have to rewrite just what it has now written. The law does not contemplate a useless act, so concluding as we have, that our cases (latest cases) are wrong upon the vital question, the proper thing

State ex rel. Publishing Co. v. Hackmann.

for this court is to so say, as we have.said, and sustain the opinion already written, which we now approve. To this end let our writ be quashed, and the opinion of the Court of Appeals sustained.

Nor is there substance in the contention that defendant's demurrer to the evidence should have been sustained. The Court of Appeals properly ruled this question. Hence our order above that our writ be quashed and the opinion sustained. All concur.